IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-00417-BO-RN

NIKITA BLUMENSHINE,
    Plaintiff,

v.      O R D E R

VANCE COUNTY BOARD OF
EDUCATION, EDWARD ORTEGA *in
his official and individual capacity*,
NORDIA McLAUGHLIN, *and* DAVID
MURRAY,
    Defendants.

This matter is currently before the Court on two motions to dismiss. The first motion was filed by Defendant Vance County Board of Education (VCB) and Principal Edward Ortega, in his official capacity [DE 20]. The second motion was filed by Nordia McLaughlin, David Murray, and Edward Ortega in their individual capacities [DE 29]. For the following reasons, both motions are granted in part and denied in part.

BACKGROUND

Plaintiff Blumenshine is the mother and *guardian ad litem* to her minor son, O.B. DE 1-3 at 1. O.B. was eleven years old when he began attending school at STEM Early High School in August 2022 [DE 1-3 at 5]. O.B is diagnosed with attention-deficit-hyperactivity disorder (ADHD), oppositional defiant disorder (ODD), autism, and Ehlers-Danlos syndrome (EDS).[1]

---

[1] Ehlers-Danlos syndrome is a group of inherited disorders that affects connective tissue such as skin, joints, and blood vessels. This can result in fragile skin that does not heal as effectively from injury. In more severe cases, it can lead to a weaker circulatory system and a distinctive facial appearance. *Ehlers-Danlos syndrome*, MAYO CLINIC (Aug. 25, 2022).

In August 2022, Plaintiff Blumenshine met with school administrators to discuss O.B.'s conditions and to create a behavior intervention plan. Plaintiff had requested the creation of an Individualized Education Plan (IEP), but was denied [DE 1-3 at 5].

Beginning in September 2022, O.B. faced harassment and ridicule by his classmates on the basis of his physical and mental conditions [DE 1-3 at 6]. This verbal abuse, which included insults like "faggot" and "little bitch," escalated into physical violence when one of O.B.'s classmates punched him in the face in front of the full classroom and Defendant Murray. *Id.* The bullying continued, and O.B. began to express suicidal ideation in December 2022 [DE 1-3 at 7]. O.B. called Plaintiff Blumenshine from the principal's office on numerous occasions, but O.B. was always forced to return to the same classroom. *Id.* Plaintiff Blumenshine arranged a meeting with Defendant Ortega, Defendant McLaughlin, and O.B.'s in-home counselor to address these issues, but no changes took place afterwards [DE 1-3 at 8].

The harassment reached a peak on January 26, 2023, when several students pulled out their phones and began filming while another student aggressively approached O.B. *Id.* Defendant McLaughlin took O.B. to the principal's office and left him there. *Id.* Fearing to return to the classroom, O.B. proceeded to walk out of the building to a McDonald's restaurant over a mile from the school [DE 1-3 at 9]. Defendant McLaughlin called Plaintiff Blumenshine to report the incident of bullying, but did not mention her son's disappearance—instead, Plaintiff Blumenshine only learned of her son's location when she was called by a McDonald's employee. *Id.*

Following this incident, Defendant Ortega recommended that Plaintiff Blumenshine withdraw her son from school for four days for a "mental health break." DE 1-3 at 10. O.B. was withdrawn from school on January 26, 2023, and enrolled in online classes on February 21, 2023.

*Id.* Since that time, O.B. has been diagnosed with post-traumatic stress disorder (PTSD) and has been involuntarily committed to psychiatric care on two occasions [DE 1-3 at 11].

Plaintiff Blumenshine proceeded to file the present lawsuit, alleging that all Defendants acted with negligence, that all defendants violated 42 U.S.C. § 1983, that all defendants violated the Americans with Disabilities Act, and that the Vance County Board of Education violated the North Carolina Constitution by denying O.B. the right to an education and was negligent in the hiring, firing, and supervision of employees. Furthermore, Plaintiff Blumenshine alleges that the Vance County Board of Education and Defendant Ortega violated O.B.'s right to due process when he was asked to leave school for four days.

Defendant Vance County Board of Education and Defendant Ortega in his official capacity have moved together to dismiss the complaint [DE 20]. Defendant Murray, Defendant McLaughlin, and Defendant Ortega in his individual capacity have moved together to dismiss the complaint [DE 29]. Both will be addressed in turn.

## ANALYSIS

A motion for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard does not require detailed factual allegations, *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 212 (4th Cir. 2019), but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022).

3

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Although the court accepts the factual allegations as true, the court does not accept the complaint's legal conclusions, so "simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard." *ACA Financial Guaranty Corporation*, 917 F.3d at 212.

## I. Vance County Board of Education and Defendant Ortega, officially.

*A. Plaintiff Blumenshine was not required to exhaust her administrative remedies.*

VBC and Defendant Ortega have moved to dismiss Plaintiff's claims under 28 U.S.C. § 1983 and the ADA, claiming that Plaintiff Blumenshine failed to exhaust her administrative remedies as she was required to do under the Individuals with Disabilities Education Act (IDEA). IDEA provides that, if a suit brought under federal law "seek[s] relief that is also available under" IDEA, then the plaintiff must first exhaust IDEA's state-provided administrative procedures. 20 U.S.C. § 1415(l). This exhaustion requirement applies to claims brought under the Americans with Disabilities Act and 28 U.S.C. § 1983 when the "gravamen" of such claims involves the denial of a free and adequate public education (FAPE). *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 169 (2017); *A.H. by and through H.C. v. Craven Cnty. Board of Educ.*, 2017 WL 3493512, at *7 (E.D.N.C. 2017).

To determine if the "gravamen" of the claims concerns the denial of a FAPE, the Supreme Court has provided two guiding questions. First, "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a

4

public theater or library?" *Fry*, 580 U.S. at 171. Second, "could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.*

Using these questions as a touchstone, it is apparent here that the gravamen of Plaintiff's complaint concerns the denial of a FAPE. The Plaintiff alleges that O.B. is a minor child who was denied an IEP, and that the school's IEP process "violated multiple provisions of the North Carolina Policies Governing Services for Children with Disabilities." DE 1-3 at 11; *Harris v. Brown*, 2021 WL 733673, at *4 (N.D. Ga. 2021) (referencing an IEP weighs in favor of IDEA's applicability). In her ADA claim, Plaintiff alleges that O.B.'s disability prevented him from accessing "services, benefits, activities, programs, or privileges" at a comparable rate to his peers [DE 1-3 at 22]. In her § 1983 claim, she alleges that Defendant Ortega refused to provide accommodations for O.B.'s education, and that he blamed O.B. for the bullying that O.B. faced [*Id.* at 16]. These are all "school-specific" allegations which "concern the proper setting in which to educate" a student and which are "uniquely tied to the school environment and [the student's] status as a student within the school." *Vlasaty v. Wake Cnty. Pub. Sch. Sys. Bd. of Educ.*, 2018 WL 4515877, at *6 (E.D.N.C. 2018).

However, this is not the end of the inquiry. In 2023, the Supreme Court unanimously decided *Luna Perez v. Sturgis Public Schools*. 598 U.S. 142 (2023). In this case, the Court stated that "a suit admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes if the remedy a plaintiff seeks is not one IDEA provides." *Id.* at 150. Here, the Plaintiff is seeking monetary damages, a form of relief not provided for by IDEA. DE 26 at 9 (citing *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 186 (3d Cir. 2009)).

5

Plaintiff Blumenshine was therefore not required to exhaust her administrative remedies under IDEA because she is not seeking the kind of relief that IDEA can provide. Exhaustion does not bar her from advancing her ADA and § 1983 claims against VCB and Defendant Ortega.

*B. The plaintiff has successfully stated a § 1983 claim against VCB.*

The Due Process Clause of the Fourteenth Amendment provides that '[n]o State shall… deprive any person of life, liberty, or property without due process of law.'" *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 194 (1989). Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. However, liability may still exist "when the state itself creates the danger." *H.B. v. State Bd. of Educ.*, 2015 WL 2193778, at *3 (E.D.N.C. 2015). "To establish § 1983 liability based on a state-created danger theory, a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission." *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015).

To make such a claim against a municipal entity such as a school board, a plaintiff must do more than simply allege a constitutional violation by a board employee—instead, the constitutional violation must emerge from an "official policy or custom" of the municipal entity. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). This requirement can be satisfied by referencing an official written policy, the decisions of a person with final policymaking authority, an omission such as a failure to train, or widespread customs and practices within the municipal entity. *Z.G. ex rel. C.G. v. Pamlico Cnty. Pub. Sch. Bd. of Educ.*, 744 Fed. App'x 769, 780–81 (4th Cir. 2018).

Here, the Plaintiff has included allegations that she applied for an IEP and was denied, and then raised the issue again to no effect [DE 1-3 at 5]. Even when the administration was informed

6

of O.B.'s history of bullying, "no plan was put into place." *Id.* at 6. Additionally, when the issue was raised with the "Student Services Director," that individual did not address the conduct at issue or attempt to create an IEP, but rather proposed removing O.B. from school altogether [*Id.* at 10]. After the bullying, and in anticipation of O.B.'s return to school, the Plaintiff applied for, and was again denied, an IEP [*Id.* at 10].

A single denial of an IEP, standing alone, would probably have been insufficient to show a "persistent and widespread... custom or usage." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). What the plaintiff has alleged here, however, is a persistent pattern of administration officials denying student services to a disabled child even after profound and serious issues were brought to their attention. The North Carolina Department of Public Instruction's Office of Exceptional Children agrees, having determined that "O.B's IEP process violated multiple provisions of the North Carolina Policies Governing Services for Children with Disabilities." DE 1-3 at 11.

The Court finds that these allegations are sufficient to support the existence of an official policy or custom of the school board that led to the constitutional violation at issue here. As such, the Plaintiff has successfully stated a § 1983 claim against the Vance County School Board.

### C. *The Plaintiff has successfully stated an ADA claim against Defendant Ortega, but not the Vance County School Board.*

To bring a claim under Title II of the ADA, "the plaintiff must establish: (1) that plaintiff has a disability; (2) that plaintiff is otherwise qualified for the benefit or program in question; and (3) that plaintiff was excluded from the benefit or program due to discrimination solely on the basis of disability. *S.F. v. Union Cnty. Bd. of Educ.*, 2024 WL 1316229, at *2 (W.D.N.C. 2024). "Further, to set forth a claim of discrimination... in the context of disabled children a plaintiff must show 'either bad faith or gross misjudgment.'" *Q.C. v. Winston-Salem / Forsyth Cnty. Sch. Bd. of*

7

*Educ.*, 2021 WL 1430697, at *6 (M.D.N.C. 2021) (citing *O.V. v. Durham Pub. Sch. Bd. of Educ.*, 2018 WL 2725467, at *23 (M.D.N.C. 2018)).

It is obvious from the pleadings that O.B. was disabled, and that he was entitled to the benefit in question—a free and adequate public education. The only meritorious point in dispute is whether the Plaintiff has adequately alleged that VCB and Defendant Ortega acted with bad faith or gross misjudgment. This is a high standard, requiring the plaintiff to allege that the "school's actions depart[ed] substantially from accepted professional judgment, practice or standards as to demonstrate that the persons responsible did not base the decision on such a judgment." *D.N. v. Louisa Cnty. Pub. Sch.*, 156 F. Supp. 3d 767, 777 (W.D. Va. 2016).

The Court determines that the Plaintiff has met the pleading requirements as to Defendant Ortega, but not as to VCB. The Plaintiff has alleged that Defendant Ortega continued to send a child whom he knew was disabled and struggled socially back into a classroom full of bullies. When the situation did not improve, Ortega instructed that O.B. be removed from the school instead of addressing the situation directly. The allegations suggest that Ortega did not take O.B.'s disabilities and suffering seriously, and continued to allow him to be placed in situations posing great emotional, mental, and physical danger. This allegation of gross misjudgment meets the pleading standard for a claim under Title II of the Americans with Disabilities Act.

However, the same cannot be said for the Vance County Board of Education, which operated at some remove from the events that transpired here. A finding of gross misjudgment on behalf of VCB would require factual allegations that VCB was aware of the allegedly improper actions, and failed to act on that knowledge. *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 77 (4th Cir. 2016) (absent an allegation of an official decision "not to remedy" known adverse conduct against a student, plaintiffs could not show deliberate indifference, let alone gross

8

misjudgment or active malice). There is no allegation of such knowledge here. For these reasons, the Plaintiff has adequately pleaded an ADA claim against Defendant Ortega, but not against VCB.[2]

*D. VCB and Principal Ortega are partially protected by governmental immunity.*

Under North Carolina law, the doctrine of governmental immunity bars suits against "the state, its counties, and its public officials sued in their official capacity." *Herring ex rel. Marshall v. Winston-Salem / Forsyth Cnty. Bd. of Educ.*, 529 S.E. 2d 458, 461 (N.C. App. 2000). "A county or city board of education is a governmental agency, and therefore may not be liable in a tort action except insofar as it has duly waived its [governmental] immunity from tort liability pursuant to statutory authority." *Overcash v. Statesville City Bd. of Educ.*, 348 S.E. 2d 524, 526 (N.C. App. 1986). One such way in which a school board may waive immunity is by purchasing liability insurance. N.C. Gen. Stat. § 115C-42.

VCB participates in the North Carolina School Boards Trust. This alone is inadequate to waive immunity. *Willett v. Chatham Cnty. Bd. of Educ.*, 625 S.E. 2d 900, 901–02 (N.C. App. 2006). However, VCB has purchased reinsurance coverage for state law claims above $150,000. The purchase of liability insurance can act as a waiver of immunity, but does not so act "if the action brought against [it] is excluded from coverage under [its] insurance policy. *Patrick v. Wake Cnty. Dep't of Soc. Servs.*, 655 S.E.2d 920, 923 (N.C. App. 2008).

VCB's excess liability insurance specifically excludes from coverage any claims related to "dishonest, fraudulent malicious, wanton, willful, intentional, or criminal acts," "acts of reckless or deliberate indifference," and "negligent" hiring, training, reporting, investigation, retention, or

---

[2] The pleadings in this case are complex. For clarity, the Court notes that the question of whether a constitutional violation was the product of an 'official policy or custom' in violation of § 1983 is a separate inquiry from whether the school board acted with 'bad faith or gross misjudgment' for the purposes of an ADA claim.

9

supervision. DE 20-2 ex. B at 1; DE 20-2 ex. A at 7. An unsupported assertion from the Plaintiff that VCB has waived immunity [DE 1-3 at 4] is inadequate when VCB has produced evidence to the contrary. *Barrett v. Bd. of Educ. of Johnston Cnty., N.C.*, 13 F. Supp. 3d 502, 508 (E.D.N.C. 2014). VCB is governmentally immune from such claims.

However, the Plaintiff did not only sue under a theory of gross negligence, but also a theory of ordinary negligence—language which is conspicuously absent from VCB's reinsurance policy [DE 1-3 at 12–13]. To determine if the Plaintiff's claim falls within the exclusionary language of VCB's reinsurance policy, the court compares the policy provisions with the allegations in the pleadings. *Herring*, 529 S.E.2d at 463. The Court construes the scope of the exclusionary clause against the wavier of immunity, as such waiver "may not be lightly inferred." *Overcash*, 348 S.E.2d at 527.

Here, the Court determines that Plaintiff's claims for negligence do not fall within the scope of the reinsurance policy's exclusionary language. While the Plaintiff does allege that the Defendants were "grossly negligent," DE 1-3 at 13, she also alleges that they acted with "negligence," DE 1-3 at 14. The Plaintiff further alleges that the Defendants failed to take "reasonable protective action," failed to "properly supervise [their] students," and failed to "properly accommodate the minor Plaintiff's disability." *Id.* at 13. This language sounds in ordinary negligence, not gross negligence. Thus, the Plaintiff's claim for negligence is not included within the scope of the reinsurance policy's exclusionary language.

VCB and Principal Ortega have waived their governmental immunity, but only to the extent that the Plaintiff has alleged negligence. These Defendants have not waived their governmental immunity from Plaintiff's other tort claims, and, accordingly, those other tort claims must be dismissed.

10

Case 5:24-cv-00417-BO-RN   Document 34   Filed 03/24/25   Page 10 of 16

*E. The Plaintiff has adequately stated a negligence claim against VCB and Ortega.*

"To make out a prima facie claim of negligence, 'a plaintiff must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted from the injury.'" *Parker v. Town of Erwin*, 77 S.E.2d 710, 729–30 (N.C. App. 2015).

Here, Plaintiff Blumenshine alleges a duty based on O.B.'s position as a vulnerable student and the Defendants' positions as governing, adult authorities [DE 1-3 at 12–13]. The Plaintiff then lists numerous ways in which that duty was breached, including "failure to take reasonable protective action," "failing to secure the… high school," "failing to properly supervise its students," and "violating [multiple school board policies]." *Id.* Finally, the Plaintiff alleges actual and proximate causation and damages. *Id.* at 14. The Court readily concludes that the plaintiff has adequately pled negligence.

*F. The Plaintiff has abandoned her claims under the North Carolina Constitution.*

In her complaint, Plaintiff levied several claims against VCB and Principal Ortega under the North Carolina Constitution [DE 1-3 at 19]. In their motion to dismiss, VCB and Ortega argued that the constitutional claims should be dismissed [DE 21 at 25]. Plaintiff did not challenge those arguments in her response.

"District courts in this circuit have held that the failure to address an argument in opposition to a motion to dismiss constitutes abandonment of the claim." *Harlow v. Wells Fargo & Co.*, 608 F. Supp. 3d 377, 387 (W.D. Va. 2022). The Court does not depart from that tradition here. Accordingly, Plaintiff's constitutional claims against Defendant VCB and Principal Ortega are dismissed.

*G. The Plaintiff has failed to state a procedural due process claim.*

Finally, the Plaintiff alleges that Defendant VCB and Principal Ortega violated O.B.'s property interest in an adequate education by requesting that he be removed from school without adequate due process [DE 1-3 at 21]. Courts have routinely held that the property interest at stake is not "in the particulars of the educational experience, but rather in participation in the educational process as a whole." *K.U. by and through Michael U. v. Alvin Indep. Sch. Dist.*, 991 F. Supp. 599, 606 (S.D. Tex. 1998). "The myriad activities which combine to form the educational process cannot be dissected to create hundreds of separate property rights, each cognizable under the Constitution." *Dallam v. Cumberland Valley Sch. Dist.*, 391 F. Supp. 358, 361 (M.D. Pa. 1975).

At most, Plaintiff's allegations suggest that she was asked to keep O.B. home for four days, and that she then elected to keep him home for nearly a month [DE 1-3 at 10]. She does not state whether she opposed this request at the time, or sought to pursue alternative remedies. The Complaint shows that it was Plaintiff's decision to keep O.B. at home for such an extended period of time that VCB enrolled O.B. in online school—these allegations cannot support a cause of action under the Fourteenth Amendment. Count VI must, accordingly, be dismissed.

## II. Defendant Murray, Defendant McLaughlin, and Defendant Ortega, individually.

*A. Defendant Ortega is not protected in his individual capacity by public official immunity.*

Defendant Ortega contends that he is protected from state law claims in his individual capacity because he is a public official. "A public official can only be held individually liable for damages when the conduct complained of is malicious, corrupt, or outside the scope of official authority." *Hunter v. Transylvania Cnty. Dep't of Soc. Servs.*, 701 S.E.2d 344, 346 (2010).

While the Court appreciates the significant judgment and discretion that principals must exercise in the course of their duties, it faces no difficulties in concluding that Ortega may be held

personally liable here. Plaintiff's allegations, taken as true, demonstrate a pattern of gross and malicious indifference towards a disabled student who made their struggles well known to the proper adults. When a defendant acts "wantonly, doing what any man of reasonable intelligence must have known to be contrary to his duty, and purposely prejudicial and injurious to another, the law will imply malice." *Givens v. Sellars*, 159 S.E.2d 530, 535 (N.C. 1968). Plaintiff's allegations are not conclusory, and are instead supported by a narrative of bullying, harassment, and missed opportunities for appropriate intervention lasting for nearly half a year.

Accordingly, the state law claims against Defendant Ortega in his individual capacity may proceed.

### B. *The Plaintiff has successfully stated a § 1983 claim for violating O.B.'s right to bodily integrity.*

The Due Process Clause of the Fourteenth Amendment provides that '[n]o State shall... deprive any person of life, liberty, or property without due process of law.'" *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 194 (1989). Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. However, liability may still exist "when the state itself creates the danger." *H.B. v. State Bd. of Educ.*, 2015 WL 2193778, at *3 (E.D.N.C. 2015). "To establish § 1983 liability based on a state-created danger theory, a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission." *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015).

Despite Defendants' contention that Defendants Murray, McLaughlin, and Ortega never took any affirmative actions to create or increase danger, Plaintiff's complaint is replete with examples to the contrary. Plaintiff alleges, among other things, that Defendant Ortega refused to uphold the disciplinary process against O.B.'s bullies and sent O.B. back to the classroom [DE 1-

13

3 at 7], that Defendant Murray encouraged the bullying by refusing to address O.B.'s crying [DE 1-3 at 6], and that Defendant McLaughlin removed O.B. from the classroom and then abandoned him, leading directly to O.B.'s walk to McDonald's [DE 1-3 at 8–9]. These allegations are reinforced by the fact that Plaintiff Blumenshine met with the individual Defendants before the school year began and informed them of O.B.'s social struggles and the potential bullying and harassment that he could face.

"State actors may not disclaim liability when they themselves throw others to the lions." *Rosa*, 795 F.3d at 429. This was the case here, and the Plaintiff has adequately pled a § 1983 claim under the state-created danger theory.

*C. The Plaintiff has successfully stated an ADA claim against the individual defendants.*

The Court has previously set out the law governing pleading under Title II of the ADA in Part I-C. Here, however, there are two disputed points—whether the Plaintiff adequately alleged that O.B. was discriminated against solely on the basis of his disability, and whether the Plaintiff has adequately alleged that the individual defendants acted with bad faith or gross misjudgment. This is a high standard, requiring the plaintiff to allege that the "school's actions depart[ed] substantially from accepted professional judgment, practice or standards as to demonstrate that the persons responsible did not base the decision on such a judgment." *D.N. v. Louisa Cnty. Pub. Sch.*, 156 F. Supp. 3d 767, 777 (W.D. Va. 2016).

On both points, the Court determines that the Plaintiff has met the pleading requirements. The Fourth Circuit has explained that a plaintiff need only allege that "discrimination on the basis of [the student's] disability was a motivating factor in [their] exclusion" from the benefits of a public program. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 465 (4th Cir. 1999). Here, the plaintiff

14

has adequately alleged that the Defendants were aware of O.B.'s disabilities, and that O.B.'s disabilities played a material role in how his bullying was treated.

Further, the bad faith and gross misjudgment alleged by Plaintiff was detailed in Part II-B. Taken together, the Plaintiff's pleadings show that the individual defendants continued to send a child who they knew was disabled and struggled socially back into a classroom full of bullies. When the situation did not improve, the Defendants chose to request that O.B. be removed from the school instead of addressing the situation directly. The most serious allegation of gross misjudgment, however, is undoubtedly Plaintiff's claim that Defendants allowed an autistic, disabled, 11-year-old child to be missing from school grounds for over an hour before even beginning to search for him [DE 1-3 at 9]. This gross misjudgment undoubtedly meets the pleading standard for a claim under Title II of the Americans with Disabilities Act.

*D. The Plaintiff has failed to state a procedural due process claim.*

For the reasons discussed in Part I-G, Plaintiff's allegations cannot support a conclusion that O.B. was denied a property interest in his education without adequate due process. Count VI was previously dismissed as against VCB and Defendant Ortega in his official capacity. Now, Count VI is dismissed against Defendant Ortega in his individual capacity. No part of Count VI remains.

## CONCLUSION

For the foregoing reasons, the first motion to dismiss [DE 20] is GRANTED IN PART and DENIED IN PART. Count I is DISMISSED against Defendant Vance County School Board and Defendant Ortega in his official capacity to the extent that it alleges gross negligence, but is not dismissed to the extent that it alleges ordinary negligence. Count VI against Defendant Ortega in his official capacity is DISMISSED. Counts II, VI, and VII against Defendant Vance County

15

School Board are DISMISSED. Count IV may proceed against the Vance County School Board, Count VII may proceed against Defendant Ortega in his official capacity, and Count I may proceed against both the Vance County School Board and Defendant Ortega to the extent that it alleges ordinary negligence.

The second motion to dismiss [DE 29] is GRANTED IN PART and DENIED IN PART. Count VI is DISMISSED as to Defendant Ortega in his individual capacity. All other claims against Defendant Murray, Defendant McLaughlin, and Defendant Ortega in his individual capacity—Counts I, III, VII, and VIII—may proceed.

SO ORDERED, this 24 day of March 2025.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE